## BRAME *v.* WYATT.

(In Banc.  Jan. 22, 1945.)

[20 So. (2d) 667.  No. 35727.]

Creekmore & Creekmore, of Jackson, for appellant.

Snow & Covington, of Meridian, for appellee.

**Greek L. Rice**, Attorney General, by **W. B. Fontaine**, Assistant Attorney General, amicus curiae.

**Alexander, J.,** delivered the opinion of the court.

Bill was filed by appellee as a citizen and taxpayer to recover the sum of $27.32 alleged to have been unlawfully collected by appellant as tax collector of Lauderdale County under the provisions of Chapter 179, Laws 1944, and for injunction against the continuance of the practice followed in effecting such collection. It is alleged that the proper state officials had refused to sue, and complainant sues on behalf of the public and invites all other interested members of the public to join.

The applicable statute referred to provides for allowance of fees to the tax collector in the collection of state ad valorem taxes upon the following schedule: 5% upon the first $25,000 so collected; 3% on the next $25,000; 2% on the next $25,000; and 1% on all such taxes collected in excess of $75,000. The Act further provides:

"The excess commissions over one per cent allowed the tax collector by the foregoing clauses shall be collectible beginning on the first Tuesday after the first Monday in January of each year but nothing herein shall permit a tax collector to collect such excess commission more than once during any year beginning on the date aforesaid."

The briefs assume as we do that the effective date of the Act is April 1, 1944. For the first three months of 1944 the tax collector made state ad valorem tax collections in the sum of $38,126.91, to which he applied the fee schedule then made aplicable by Chapter 24 of the Laws of 1938 (Ex. Session). Under this schedule he was entitled to and collected fees on the following basis: 5% on the first $10,000; 2% on the next $30,000. Additional brackets are not here involved since his total collections for the first three months of 1944 did not exceed $40,000. During April 1944, he has collected from this source the sum of $1,366.49, upon which he deducted fees of 5%, pursuant to the 1944 Act. Complainant contends that the tax collector was entitled only to deduct fees on

the basis of 3%, and that the excess of 2%, or \$27.32, was unlawfully collected. The issue was heard upon answer, denying the illegality of the deduction, and asserting authority to collect fees upon the basis of 5% upon an additional amount collected after April 1, 1944. The prayer of the bill was granted and injunction issued, whence this appeal.

The Act of 1944 must be construed in the light of its purpose as gathered first from its letter, and secondly from the circumstances of its adoption "insofar as these may interpret such purpose." Smith v. Chickasaw County, 156 Miss. 171, 125 So. 96, 705. Fundamentally, its purpose is to provide increased compensation to the tax collector. In effecting this purpose, it sought to amend the existing law so as to increase the existing basis and to make it presently effective. The propriety of such increase could readily be assumed to be found in the reductions occasioned by the inroads upon such officials' compensation by the operation of homestead exemption laws, and the contemporaneous passage of Chapter 137 of the Laws of 1944 which denied fees upon the collection of privilege taxes collected within municipalities. Be that as it may, it was the expressed view of the state's chief legal advisor that an amendment similar to that effected by the 1944 law would operate to allow the tax collector to retain such fees as had been collected prior to April 1, 1944, under the preexisting basis, but that thereafter fees would be collectible upon the new schedule and that the collector would be entitled to collect 5% upon a total of \$25,000 whether part had been collected prior and part after the passage of the amending law. See Opinions Attorney General 1937-38, p. 130, also id. 1929-31, p. 210. See also Hartsfield v. Lafayette County, 185 Miss. 564, 189 So. 177. It is no unreasonable assumption that the views of this official were consulted in the drafting of legislation of so great importance to the state, and that his expressed views were known to the legislature. It is true that the opinion was construing the effect of the

1938 Act. upon the prior Act of 1932, but the principles and conclusions are such as would uphold the appellant's contentions, especially since Section 1790 of the Code of 1930, Code of 1942, Sec. 3938, was then upon our statute books. This Section is discussed later in our opinion. The right of the tax collector to retain all fees properly collected prior to the 1944 Act is clear. United States F. & G. Co. v. Gully, 168 Miss. 740, 150 So. 828.

While it is contended that an amending act is held to have displaced a prior statute in the sense that the prior act is to be construed as if it had contained the new provisions, the 1944 Act must be construed prospectively, particularly since to increase compensation for services theretofore performed would violate Mississippi Constitution, Section 96.

A just and logical interpretation of the 1944 Act requires such application as would work an increase in the annual compensation of the tax collectors. In future years, the fees would be allowed upon the basis of 5% upon the first $25,000. It is inconceivable that the legislature was unwilling that such an emolument was not to apply during the transition year 1944, nor that a tax collector taking office April 1st, nor one in office who perchance had made no collections prior thereto, would be denied the right to apply such schedule. Yet, to allow an official to collect 5% upon $10,000 prior to April 1st, and an additional 5% on the first $25,000 collected thereafter, would contravene the quoted prohibition that "nothing herein shall permit a tax collector to collect such excess commission (over one percent) more than once during any year beginning on the date aforesaid" (the first Monday in January).

The proviso expresses both a limitation and a privilege. Such expressed privilege is not to be diminished by reviving the provisions of the pre-existing act, Code 1942, Sec. 3938, so as to create an inconsistency. If this section were integrated into the 1944 Act the appellant would be given a clean slate on July 1, 1944, and would be en-

titled to 5% on the first $25,000 collected thereafter, even during the year 1944, thereby receiving 5% on a total of $35,000 during the calendar year, contrary to the quoted prohibition. But for this prohibition the argument that Section 3938 required computation as of fiscal years would be plausible and it may be, but we do not so decide, that in the absence of this proviso the views expressed in the separate opinion of the Chief Justice would control.

Section 3938 provided that commissions above the 1% bracket be deducted based on the fiscal year. The 1944 Act states that such commissions "shall be collectible beginning on the first Tuesday after the first Monday in January of each year" and, as if this were not sufficient to supersede the former fiscal basis, which would have permitted a new invocation of the 5% schedule July 1, 1944, it adds, "but nothing herein shall permit a tax collector to collect such excess commission more than once during any year beginning" on the said first Tuesday after the first Monday in January. Nor does this refer solely to the said day in the then current year but "of each year."

It was the evident purpose to allow tax collectors to collect at least $1,250 (5% of $25,000) when his annual collections equaled that amount. Had the act been passed prior to the first Monday in January, there would of course have been no difficulty, and the delay in its passage was undoubtedly endured in spite of knowledge that it was daily becoming progressively inoperative as to collections being made in the interim, but on the assumption that so far as it could, it would compensate these disparities by applying its schedule to future collections. But for Section 96 of the Constitution, a consistent purpose would have made its provisions retroactive. The only way in which the legislative purpose could be effected was to recognize that since the statute could not operate retrospectively, the intended total compensation should ultimately be payable if earned. Retro-

active effect is not given the law by taking into account a prior collection of 5% on an initial $10,000, whereby this amount is chargeable to the corresponding bracket under the amending statute. To gain, by a retrospective look, data by which to limit an incumbent's future compensation, is an entirely different matter from making the new provisions retroactive so as to readjust earned compensation to his advantage. The result is not to increase compensation for services performed, but to insure that the quoted limitation may not be ignored by disregarding the fact that the "excess commission" of 5% had already been applied to $10,000 of the maximum of $25,000. This is all that the appellant contends for.

We are of the opinion that he was entitled to continue the application of 5% to collections after April 1, 1944, not exceeding an additional $15,000, and are compelled therefore to reverse the finding of the chancellor, and to deny the relief prayed for, with dismissal of the injunction.

Reversed and decree for appellant.

L. A. Smith, Sr., J., took no part in this decision.

SEPARATE OPINION.

Sidney Smith, C. J., delivered a separate opinion.

I am of the opinion that Chap. 179, Laws 1944, authorizes the sheriffs to retain for their services in the collection of taxes, "5% on the first $25,000.00 of the state ad valorem taxes collected" by them for the year 1944, after the first day of April of that year, without reference to what they had theretofore received for collections made prior to April first. To restrict them to 5% on $15,000 thereafter collected is to give the statute a retroactive effect which should not, and in my opinion cannot, be done.

DISSENTING OPINION.

**Griffith, J.,** delivered a dissenting opinion.

Section 1790, Code 1930, has not been amended by any subsequent act and now appears as Section 3938, Code 1942. It reads as follows:

"Save as to the excess one per cent commissions mentioned in the foregoing section tax collectors in deducting commissions for the collection of ad valorem taxes shall deduct said commissions based upon the fiscal year and not the calendar year."

The chapter in question, Chap. 179, Laws 1944, does not touch Section 1790, Code 1930, does not mention it, but does refer to the "following fees and commissions each year." It follows that what is meant by each year as applicable to the amendatory act now under consideration, must find its answer in Section 1790, Code 1930, Section 3938, Code 1942, and nowhere else.

What, then is meant by Section 1790, Code 1930, when it says that the "tax collectors in deducting commissions for the collection of ad valorem taxes shall deduct such commissions based upon the fiscal and not the calendar year," and what is meant by the clause in all these statutes, "5% on the first $25,000.00" (or whatever the amount has been) "of the state ad valorem taxes collected"? If it does not mean the first $25,000 collected within the fiscal year, then Section 1790 is without any meaning at all.

Under Section 9993, Code 1942, the tax collector is required within twenty days after the close of any month to report and pay over all taxes collected by him during the month. In doing so he deducts his fees for making the collections. This section, in substantially the same form, has been in all our codes for nearly a century. Under that section it has been the consistent practice to deduct the higher bracket of fees on the first month at the beginning of the fiscal year. Formerly the fiscal year

was from October.1 to September 30, as fixed by Section 115, Constitution 1890, but this was amended, Chap. 115, Laws 1935, so as to make the fiscal year from July 1 to June 30.

The admitted facts show that the tax collector had already made his deductions under the higher brackets, for the fiscal year, but his attempt here is to start a new year on April 1 for application of the higher brackets when this is neither the beginning of a fiscal year nor of a calendar year. So to do would be to allow thim to start another higher bracket on July 1 at the opening of the fiscal year, with the result that two series of the higher bracket would be applied during one fiscal year when the law has never allowed more than one such higher bracket in any one year, and more cannot be allowed, as was distinctly held in Hartsfield v. Lafayette County, 185 Miss. 564, 189 So. 177, and certainly not unless by an amendment to Section 1790, Code 1930, Section 3938, Code 1942, which, as already stated, the Act now in question does not touch. If the legislature did not intend that Section 1790 should be considered as applying to the new Act it could easily have said so, and, not having so said, it is not within the province of the Court, as is submitted with deference, to now say it for the legislature.

The Act here under consideration is amendatory of Section 1789, Code 1930, and from the date of the Act, it stands as if it had been in the Code of 1930, and Section 1790 immediately follows in the language first above quoted; wherefore it has the same effect upon the new Act as had Section 1789 been added to the new Act as the last section thereof—unless without legislative authority a plain section of the Code is to be stricken down, which is beyond the legitimate authority of any court to do.