# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-CC-01033-SCT

*MISSISSIPPI EMPLOYMENT SECURITY*
*COMMISSION*
*v.*

*FLORENCE ANN CULBERTSON, BONNIE JONES,*
*JOANNE McMINN, KAY ANN STAPLES AND*
*ALWILDA SAVELL*

### ON MOTION FOR REHEARING

DATE OF JUDGMENT:     6/14/2000
TRIAL JUDGE:     HON. TOMIE T. GREEN
COURT FROM WHICH APPEALED:     HINDS COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:     ALLAN P. BENNETT
    PEYTON S. IRBY
    RICKEY T. MOORE
    GEOFFREY MORGAN
ATTORNEYS FOR APPELLEES:     LISA B. MILNER
    JAY MAX KILPATRICK
NATURE OF THE CASE:     CIVIL - STATE BOARDS AND AGENCIES
DISPOSITION:     AFFIRMED IN PART; REVERSED AND
    REMANDED IN PART -12/12/2002
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### EN BANC.

### McRAE, PRESIDING JUSTICE, FOR THE COURT:

¶1. The motion for rehearing is granted. The original opinions are withdrawn, and this opinion is substituted therefor.

¶2. Florence Ann Culbertson ("Culbertson"), Bonnie Jones ("Jones"), Joanne McMinn ("McMinn"), Kay Ann Staples ("Staples"), and Alwilda Savell ("Savell") (the employees) were longtime employees of

the Mississippi Employment Security Commission ("MESC"). After years of experiencing a variety of problems in the workplace, the employees filed complaints with the Employee Appeals Board (EAB). They filed notices of appeal with the EAB in the fall of 1996. On April 8, 1999, the EAB issued orders to each of the employees awarding them promotions, back pay, and attorneys' fees. The MESC appealed this decision to a full board of the EAB, which affirmed the orders of the Hearing Officer on July 28, 1999. The MESC next petitioned the Circuit Court of Hinds County for a writ of certiorari, which was granted, and the circuit court affirmed the orders of the EAB and of the full board on June 6, 2000. Aggrieved, the MESC has appealed the circuit court's decision. Finding no reversible error only in the award of attorney fees', we affirm the rulings of the circuit court and of the EAB in all other issues, but reverse and remand for further proceedings regarding attorneys' fees.

## FACTS

¶3. The EAB and the full board issued separate orders for each of the five employees, granting essentially identical relief to each. The employees brought four main issues on appeal to the EAB, only two of which are relevant to this Court's review, which are: (1) whether the employees were denied promotional opportunities because of the MESC's failure to follow proper policies and procedures; and (2) whether the employees were entitled to awards of attorneys' fees. The EAB and the full board found that the MESC did not follow proper policies and procedures in making promotions, and the employees were awarded attorneys' fees, as well as back pay for three years prior to the filing of their grievances on September 30, 1996.

¶4. The EAB's ruling stated that (1) testimony revealed many instances when the announcement of a

2

vacancy was posted, yet the position was already filled; (2) the only people who were aware of the promotions were relatives or friends of management or special employees; (3) the MESC appears to have disregarded the register in state service promotions and the procedure in regards to non-state service promotions; (4) the MESC failed to follow the procedures required for review of the certificate of eligibles; (5) failure to follow proper procedure leads to the filling of vacancies with the employer's favorite employees; and (6) failure to follow the rules and regulations denied the employees the opportunity for promotion. The full board's orders affirmed these findings and stated in all its orders, "that the Hearing Officer was correct in his finding that the Appellee (MESC) failed to follow the rules and regulations of the Mississippi State Personnel Board related to promotions, and that this failure resulted in the Appellant being denied job promotions."

¶5. The MESC raises several issues on appeal, however, this Court's review is limited to our oft-cited "arbitrary and capricious" standard. We must review the record and the issues raised in relation to the EAB's findings; and therefore, the MESC's issues have been summarized and the relevant issues discussed as they relate to these findings. The following issues will be addressed: (1) whether the EAB had jurisdiction over the case; (2) whether the MESC failed to follow the MSPB's policies and procedures for promoting employees; (3) whether the MESC failed to follow the proper MSPB policies and procedures for promotions by allowing promotions to be made on the basis of favoritism and/or bias; (4) whether the EAB properly awarded back pay to the employees; and (5) whether the EAB properly awarded attorneys' fees to the employees. Finding reversible error only in the award of attorneys' fees, we affirm the ruling of circuit court and of the EAB in all other issues, but reverse and remand for further proceedings regarding attorneys' fees.

3

## DISCUSSION

### I. WHETHER THE EAB HAD PROPER JURISDICTION OVER THE CASE.

¶6.    As an appellate court, a judgment may not be substituted for that of the properly designated administrative board. *United Cement Co. v. Safe Air for the Env't, Inc.*, 558 So. 2d 840, 842 (Miss. 1990).

¶7.    The MESC claims that the EAB did not have jurisdiction over this case because the employees failed to exhaust their administrative remedies before filing these claims. However, the employees' failure to exhaust their administrative remedies in the face of substantial evidence that the MESC did not follow the MSPB rules, will not destroy the jurisdiction of the EAB or an appellate court.

¶8.    Substantial evidence was presented that employees were discouraged from filing grievances. In addition, the EAB appears not to have disregarded the rules for utilizing administrative remedies prior to filing a lawsuit as it recognized these remedies, such as the requirement that the incident must have occurred within seven (7) days of the filing of a grievance for it to be grievable, in addressing other issues, such as race and sex discrimination.

¶9.    The EAB properly found that it had jurisdiction over the case.

### II. WHETHER THE MESC FAILED TO FOLLOW THE MSPB'S POLICIES AND PROCEDURES FOR PROMOTING EMPLOYEES.

¶10.    The Mississippi State Personnel Board ("MSPB") is an administrative agency with the responsibility for oversight of the State's personnel system. The MSPB has a manual of policies, procedures, and rules to be followed by state agencies in their personnel decisions and operation. The EAB found in its orders

that the MESC had disregarded the register in state service promotions and the procedure for non-state service promotions. The MESC argues that the EAB ignored testimony explaining a detailed process for hiring and promoting employees presented by the EAB. It does not appear from the record that the EAB ignored this testimony, but that it found substantial evidence that, despite this detailed process being established, it was not being followed. This is the heart of the EAB's review.

¶11.    Charles Downs, the MESC Human Resources Director, testified on May 27, 1998, about the proper procedure for promoting employees within the MESC. The proper procedure to become eligible for a promotion was for an employee to put his or her name on a register for a particular job. Counsel for the MESC explained that the register is "a living computer document that contains the names of every employee ...with the State Personnel Board. And has satisfied the minimum qualification [sic] the position. There is a separate register for every job class specification."

¶12.    Downs testified that a person was on the register because he or she had been qualified to be on it by the State Personnel Board. Downs further explained that if an employee received a high enough score with the MSPB, then his or her name was placed on the in-house register, which was used to promote employees from within the commission. The employee's name would appear on all the registers for positions for which the employee had applied, if he or she was qualified for the position. Once an employee's name was on a register, the MSPB evaluated several factors to determine a performance rating for that employee, which was placed in their personnel file. Downs stated that before an employee was "graded" by the MSPB, the Board was supposed to have considered such factors as training, experience, length of service, and other factors. Therefore, the performance of an employee entered into the certification process.

5

¶13.	Downs also testified that when there was a vacancy in a division, a member of management would make a determination as to whether they wanted to fill the vacancy. If so, a request was made from the division director to the executive director, that instructed the personnel department to create a "certificate of eligibles." Downs testified that once the request for a certificate of eligibles was received, the personnel department was required to give a five-day announcement that the position was open. At the end of these five days and after all the applications for the position were received, the department issued "the certificate of the top ten" people with the highest scores. Downs explained that sometimes ten (10) people were not listed, if 10 employees did not qualify for a position.

¶14.	This five-day requirement appears to have come from the language of MSPB rule § 3.20, which states, "all recruitment announcements shall be advertised for not less than five working days prior to the closing date."

¶15.	In addition, MSPB Rule § 3.30 states,

> All announcements of recruitment or promotional opportunities shall contain either (1) the State Personnel Board class specification of the vacancy, or (2) the equivalent of a Mississippi Employment Security Commission job announcement, including the following: title of the position, summary of education and experience requirements, statement of indefinite recruitment or of the recruitment closing date, any examination requirements, salary, geographic location, the phrase, "An Equal Opportunity Employer," and the information on where further information can be obtained.

Rule § 3.30 clearly states that it also applies to promotions.

¶16.	In summary, when a job or a position became available, the department heads were required to request a certificate of eligibles from the MSPB, which listed the people with the top ten highest scores who were on the register for that particular job. There may have been more than ten employees listed because some may have had tie scores with other employees. The department head or other hiring official was not

6

required to pick the employee with the highest score on the list, as they were allowed to decide who was best for the position.

¶17.    However, if more than one qualified person was on a register for a particular job, it was the duty of the department head or other hiring official to compare the people who appeared on the certificate of eligibles prior to making a decision as to who would be granted a promotion. Thomas Lord, executive director of the MESC, testified that a failure to compare the persons who appeared as qualified for a promotion on a certificate of eligibles and promoting employees without considering this list would be a violation of the MSPB's policies and procedures regarding promotions.

¶18.    Sonny Scholl was Assistant UI (unemployment insurance) Director, who supervised all departments at the MESC, with the exception of UI Technical Services. Scholl testified that it was the responsibility of the department head or someone under him, *i.e.*, the unit head, to look at the register, make a determination of names eligible, and compare these employees prior to recommending an individual for a promotion. Lord testified that the department head was supposed to receive a list of the top ten persons eligible for a promotion and compare the persons on the list. Charlie Ballard, UI Director, also concurred in the above, testifying that the register and the certificate of eligibles should have been consulted before recommending someone for a promotion.

¶19.    From the record, it appears that this process was inconsistently applied and that MESC officials were confused as to the elements and steps of this procedure. Dale Smith, a department head and Culbertson's supervisor, testified that he thought his only responsibility regarding promotions was to recommend a person for a promotion and that someone above him would do the rest of the analysis as to who actually received the promotion. This testimony is in contradiction with the testimony of Scholl and

7

Ballard, above, who placed this responsibility on the department heads. Lord further testified that it would not be proper procedure for a department head to make a recommendation of a person to be promoted and then to rely on somebody else to request a list of eligibles afterwards, as Smith appears to have done.

¶20.    Smith also could not recall looking at the register or comparing the names on a certificate of eligibles when recommending the promotion of employees Karen Watson, Louis Gipson, or Nakita Booker. Another MESC department head, Brenda Kuriger, also admitted making promotions without following proper procedure, such as not comparing the individuals on the certificate of eligibles prior to making promotions.

¶21.    The MESC alleges that the employees did not state any specific promotions that they should have received over others. However, Florence Culbertson testified that she could have been promoted to the positions of Accountant Auditor III, Program Specialist, Program Specialist Senior, and ES Chief Technical Services. Culbertson further testified that she did not have any derogatory remarks in her personnel file. She had been employed in her department for eighteen years, and her score with the State Personnel Board was a 100. Culbertson stated Angie Nero received a promotion to ES Program Specialist that she (Culbertson) should have received. Nero had a college education, while Culbertson had a degree from a junior college and eighteen years of experience in the fiscal department.[1] Culbertson testified to at least five other promotions she was qualified for and did not receive.

¶22.    Bonnie Jones testified to specific promotions she thought she was qualified for and should have

---

[1] Bonnie Jones testified that six years of experience could compensate for not having a college degree for the position of ES Program Specialist.

8

received.  Jones testified that she trained a younger employee, Jim Martin, who was then promoted over her.  JoAnn McMinn also testified that she lost promotions to other less qualified employees, such as the position of Claims Specialist to Cheryl Johnson, the same position to Patricia Ainsworth in 1992 or 1993, and the same position to Johnny Moore.  Not only does McMinn believe she should have received a promotion, but she did not even know these promotions were available until after other employees had been promoted to these positions.

¶23.    The MESC argues that some of the promotions complained of above were non-status positions given to non-status employees, who usually were the first employees to be let go if cutbacks were necessary.  Promotions to non-status positions did not require a review of the register or a certificate of eligibles.  The MESC further asserts that the EAB did not properly adhere to the distinction between status and non-status employees and that, therefore, the EAB's findings are arbitrary and capricious.

¶24.    The MESC points out in its brief that,"there was no evidence that the Appellees ever applied for a non-status position...."  If none of the employees applied for non-status positions, then the fact that a review of the certificate of eligibles was not required for non-status positions becomes irrelevant.  Reviews of the certificates of eligibles <u>were</u> required for the promotions the employees hoped to acquire.  The employees made it clear that they did not want to lose their benefits as status employees.

¶25.    While some of the specific promotions cited by the employees above were given to non-status employees, such as Angela Nero, this does not diminish the employees' complaints that they should have been allowed to compete for these positions along with other qualified employees.  The employees make the argument that these were positions they were qualified for and that were given to other employees.  Whether these employees were classified as non-status or as status is irrelevant to the review of whether

9

the MESC followed proper policies and procedures for promoting the employees.

¶26.    Hiring officials would often select a person for a promotion arbitrarily and then require that person to comply with the procedures, such as getting his or her name on a register. The EAB and the full board found that this retroactive application of the promotions process was not in compliance with MSPB rules and regulations.

¶27.    The record reflects substantial evidence that proper procedures and policies were not followed in making promotions at the MESC. The evidence provided by the MESC illustrates that management was aware of the proper procedures as set forth in the MSPB Manual. However, lower level management, such as department heads, did not follow these procedures, and upper management was not aware of these inconsistencies. Promotions were given without following the proper procedures, and this opened the door for unfair promotions that disregarded other employees' qualifications for the same position.

¶28.    The MESC complains that a year prior to these grievances, it was found to have been in compliance with the MSPB's rules, after an audit performed by the State Personnel Board. However, the Hearing Officer had the opportunity to hear the testimony of employees and make a judgment based upon their grievances and the current state of affairs at the MESC.

¶29.    In addition, the MESC argues that the EAB erred by concluding that the employees should have been promoted, because there were listings of deficiencies in the employees' work performances such as lack of attendance by taking too much vacation time, slacking off at work, and lack of managerial skills. However, this argument does not relieve the MESC of its obligation to follow the proper procedures for promotions, which was the heart of the EAB review. The EAB apparently found the violations of the rules concerning promotions was an issue to be weighed more heavily than the defenses the MESC offered as

to why the employees were not promoted.

¶30.    This Court's review of the matter is not to reweigh the facts of the case, but to assess whether the EAB had substantial evidence upon which to base its findings.  Since the record provides many instances where the proper policies and procedure were not followed, the EAB's findings were not arbitrary or capricious.  The circuit court is affirmed as to this issue.

> **III.    WHETHER THE MESC FAILED TO FOLLOW THE PROPER MSPB POLICIES AND PROCEDURES FOR PROMOTIONS BY ALLOWING PROMOTIONS TO BE MADE ON THE BASIS OF FAVORITISM AND/OR BIAS.**

¶31.    The EAB found in its order that (1) there were many instances in the record where the announcement of a vacancy was not posted; and (2) the only people who were aware of promotions were "relatives, friends, or special employees."  The record provides substantial evidence for each of these findings; and therefore, the EAB did not act arbitrarily or capriciously in making its decision.

¶32.    Several of the employees and also former employees testified that they had witnessed favoritism at the MESC in terms of who received promotions and who received additional training that would qualify them for such promotions.

¶33.    Karen Watson had been employed for about ten and a half years with the MESC when she testified in February of 1998 that, if an employee was "friends with the boss," an employee could get almost whatever was requested.  Watson testified that she witnessed favoritism in the MESC concerning opportunities for seminars and additional training and  named two employees whom she felt had received special or preferential treatment.  Delores Martin, a retired employee of the MESC, testified that employee Tonya Faler received additional computer training due to preferential treatment, even though Martin was

11

her superior; and Martin testified that Sue Weaver received a promotion as a result of favoritism. Martin even stated that Culbertson should have received this promotion instead of Weaver. Culbertson testified in detail as to why she thought Angela Nero and Sue Weaver had received promotions due to favoritism. Culbertson testified that Nero had no professional training when she was hired. Culbertson further stated that Weaver lacked the proper qualifications at the time she (Weaver) was instructed to get on the register for her promotion. Weaver lacked "educational, work experience, and lack of supervision" qualities at the time that she applied for her promotion, and Culbertson knew of a "deep personal relationship" between Weaver and Smith, the department head who hired her, from the time the two attended high school together.

¶34. Employees also witnessed occasions when other employees were promised a promotion or a position and then were subsequently told to get on the register for that job in order to secure it and to be eligible for it. These practices led the EAB to conclude that the employees "associated this with the employee being told they would be promoted." This was unfair to the other employees who never had notice that this particular position was available, and therefore, were not allowed the opportunity to get on the register and apply for the job. Essentially, the MESC was picking and choosing specific employees for specific promotions without considering other qualified employees for the position, which is a blatant disregard for the MSPB policies and procedures. Promoting employees in this fashion also provides grounds to support the favoritism testified to by the employees because no consistent procedure appears to have been followed.

¶35. The MESC argues that "encouraging employees to become eligible for promotions is not illegal." However, encouraging employees to get on the register when it was predetermined that they would receive

a position and when they had not been compared with any other employees is not appropriate and violates the MSPB rules, as stated above.

¶36. Several employees testified that they found out about a promotion after the person had received it. Joan Collins, a former MESC employee, testified in February 1998 regarding notice of promotional opportunities that,"there was no advanced notice. I would hear by mouth, by word of mouth, and whenever I approached my supervisor the position would be already filled, and about a week later a notice would sometimes come around, circulate that the position was open, but it had already been filled ....The notice would not state it had been filled, but it would have already been filled." Alwilda Savell testified that "*all*" promotions made at the MESC were made as the result of favoritism. Savell further testified that usually, one would not find out about a promotional opportunity until months after the position had been apparently offered to someone and filled, and by that time, it was too late to apply for the position. Dale Smith, an MESC department head when he testified in September 1997, stated that he was aware of a relative of management who received a promotion within the MESC.

¶37. Once again, the MESC attempts to discredit the credibility of these witnesses by stating either that they could only testify "generally" or that Collins used the term "whenever" in her description of when she would approach her supervisor about a position or that one of the witnesses could not name a specific occasion when this occurred. However, the credibility of the witnesses is not an issue for this Court to decide. Rather the Hearing Officer was in a better position to judge the credibility of the witnesses, and it is not the duty or obligation of this Court, under the proper standard of review, to reweigh the facts in question. If an attack to the credibility of the witnesses on this matter is the only criticism the MESC offers against the employees on this issue, the employees presented substantial evidence that, often times, people

13

would get on a register only after obtaining knowledge that they would receive the position or promotion.

¶38.    The record provides substantial evidence that promotions were often based on favoritism or bias and not upon the qualifications of the individuals.  Because the EAB's ruling was based upon substantial evidence, we will not disturb it on appeal.  The circuit court is affirmed as to this issue.

### IV.    WHETHER THE EAB PROPERLY AWARDED BACK PAY TO THE EMPLOYEES.

¶39.    The MESC raises several reasons why the employees should not have been awarded promotions retroactively for three years prior to the filing of their grievances and should not have been awarded back pay, pursuant to the salary of these promotions, for the past three years.  The MESC asserts that these promotions and back pay should not have been awarded because Jones was promoted to a position she held as of November 1, 1996, a few months after her appeal was filed with the EAB; because Staples and McMinn had falsified information on their applications;  and because McMinn was promoted to a position, the title of which did not exist; among other complaints.

¶40.    Under section 10, "Grievances and Appeals," of the MSPB rules, rule 10.40.21(A), "Relief to be Granted," states,

> The Employee Appeals Board may reinstate a prevailing party into employment with his or her responding agency and restore all his or her employee rights and benefits including back pay, medical leave and personal leave.  The Board may also restore retirement benefits provided the integrity of such benefits remains uncompromised in accordance with all applicable laws, policies, rules and regulations.

¶41.    From the rules, the EAB clearly had the authority to award the employees back pay.  The errors mentioned above do not amount to significant error sufficient to overturn the EAB's and circuit court's decisions.  For example, the fact that Jones was "promoted" by the EAB to the position she acquired a few

14

months after her grievance was filed does not make the EAB's ruling arbitrary or capricious. It is important to note, however, that the EAB awarded Jones back pay equal to this position for three years prior to the filing of her EAB appeal, which would be an award of back pay for this position starting in 1993. The fact that Jones did in fact receive this position in November of 1996 hardly matters. The MESC does not indicate, and the record does not reflect, that Jones's award of back pay was duplicative of pay she had already received. The MESC just argues that the EAB misunderstood the facts by awarding Jones a position she already had. As stated above, Jones was awarded back pay retroactively for this promotion for three previous years. This was harmless error by the EAB.

¶42. Brenda Kuriger testified that she had reprimanded Staples and McMinn because they were given opportunities to correct their applications, concerning their educational background and did not do so. McMinn stated that she did not receive the original information to correct her application. Staples and McMinn both refused to sign the reprimands. Staples testified that she was not sure about the number of college credits she had received and ventured a guess on her application. She also testified that she later submitted a transcript to correct the error. From the record, it does not appear that this "falsification" is significant enough to require reversing the EAB's orders.

¶43. The EAB's granting of a promotion to McMinn that did not exist also appears to be harmless error. In light of the MSPB rule § 10.40.21(A), the EAB clearly had the authority to award promotions and back pay. The fact that the position of "claims specialist" did not exist, as the EAB has similar titles dealing with "claims," was harmless error on the part of the EAB, and a simple clarification of the order could have been made. This error is not significant enough to warrant reversal of the EAB's order.

¶44. The MESC further asserts that the employees should not be awarded back pay because of Miss.

15

Const. art. 4, § 96, which states,

> The legislature shall never grant extra compensation, fee, or allowance, to any public officer, agent, servant, or contractor, after service rendered or contract made, nor authorize payment, or part payment, of any claim under any contract not authorized by law; but appropriations may be made for expenditures in repelling invasion, preventing or suppressing insurrections.

Miss. Const. art. 4, § 96.

¶45.    The MESC supports this assertion by relying on the case of **Brame v. Wyatt**, 197 Miss. 679, 690, 20 So. 2d 667, 668 (1945), which held that a law which allowed for an increase in compensation for tax collectors could not be applied retroactively, or it would violate Section 96. However, in a situation closer to the present one, the Attorney General issued an opinion which stated that "Section 96 of the Mississippi Constitution of 1890 strictly forbids payment of 'retroactive raises' to any public employee unless such payment is clearly shown to be **'back pay'** previously due, but unpaid because of administrative error." Miss. Atty. Gen. Op., No. 1997-0580 (Cofer). The EAB's award of back pay can easily be considered payment in lieu of an administrative error on behalf of the MESC, as the EAB found that the employees should have been awarded these promotions and payments.

¶46.    Alternatively, it appears that the awarding of back pay in this case was not in violation of section 96, as the pay was not for services rendered. On the contrary, this back pay was to be the equivalent pay for the promotions given to the employees, which were also retroactively awarded. Therefore, this back pay was not for services previously rendered, but for promotions granted by the EAB. Article 4, section 96 does not apply, and the EAB clearly had the authority to grant the award pursuant to MSPB rule 21. The award of back pay is affirmed.

> **V.    WHETHER THE EAB HAD JURISDICTION OR AUTHORITY TO AWARD ATTORNEYS' FEES.**

16

¶47. Each employee was awarded an amount of attorneys' fees by the EAB, which was affirmed by the full board and the circuit court. Each employee received $17,500.00 in attorneys' fees, plus an additional $50.00 for reimbursement of their filing fee. The MESC argues that the award of attorneys' fees to the appellees in this case was improper because the EAB lacked the authority and jurisdiction to award the fees. We agree. The EAB is a creature of statute, and nowhere in the statutory scheme is the EAB empowered to award attorneys' fees. In this case, the EAB held that the Litigation Accountability Act of 1988, Miss. Code Ann. §§ 11-55-1 to -15 (2002), allows it to award attorneys' fees. However, that Act allows only a **court,** not an administrative board, to award attorneys' fees:

> Except as otherwise provided in this chapter, in any civil action commenced or **appealed** in any **court** of record in this state, the **court** shall award as part of its judgment . . . reasonable attorney's fees and costs . .

Miss. Code Ann. § 11-55-5(1) (emphasis added). The only actual authority for awarding attorneys' fees is set out by Miss. Code Ann § 11-55-5(1).

¶48. The case at bar was **appealed** to the circuit **court**. However, the circuit court dealt summarily with the attorneys' fees issue, in one short paragraph, merely inserting the determination of the EAB almost verbatim (except for seven minor words) into the court's Memorandum Opinion and Order, as follows:

> The record further indicates that with regard to the award of Attorneys fees, the Board decided that the Appellees had to retain counsel to vindicate their rights in regards to the denial of promotions for failure to follow the rules. Extensive pre-trial discovery, numerous motions and numerous witnesses were called at trial that lasted nearly three weeks. The Litigation Accountability Act allows the award where the prevailing party encountered unnecessary expenses in order to vindicate a state protected right. The Appellees had the right to expect that the promotion process would be fair and equal and that all appointments would be done according to the rules and regulations of the Mississippi State Personnel Board Policy and Procedure Manual.

17

¶49.  The circuit court did not question the Board's authority to award the fees, nor did it make any independent analysis as required under the Litigation Accountability Act. Thus, we reverse and remand as to this issue only, in order for the circuit court to review the record according to the mandatory requirements of the Act, which reads in pertinent part as follows:

> When granting an award of costs and attorney's fees, the **court shall specifically set forth the reasons for such award and shall consider the following factors, among others,** in determining whether to assess attorney's fees and costs and the amount to be assessed:
>
> (a) The extent to which any effort was made to determine the validity of any action, claim or defense before it was asserted, and the time remaining within which the claim or defense could be filed;
> (b) The extent of any effort made after the commencement of an action to reduce the number of claims being asserted or to dismiss claims that have been found not to be valid;
> (c) The availability of facts to assist in determining the validity of an action, claim or defense;
> (d) Whether or not the action was prosecuted or defended, in whole or in part, in bad faith or for improper purpose;
> (e) Whether or not issues of fact, determinative of the validity of a party's claim or defense, were reasonably in conflict;
> (f) The extent to which the party prevailed with respect to the amount of and number of claims or defenses in controversy;
> (g) The extent to which any action, claim or defense was asserted by an attorney or party in a good faith attempt to establish a new theory of law in the state, which purpose was made known to the court at the time of filing;
> (h) The amount or conditions of any offer of judgment or settlement in relation to the amount or conditions of the ultimate relief granted by the court;
> (i) The extent to which a reasonable effort was made to determine prior to the time of filing of an action or claim that all parties sued or joined were proper parties owing a legally defined duty to any party or parties asserting the claim or action;
> (j) The extent of any effort made after the commencement of a n action to reduce the number of parties in the action; and
> (k) The period of time available to the attorney for the party asserting any defense before such defense was interposed.

Miss. Code Ann. § 11-55-7(emphasis added).

18

¶50. The MESC correctly states that the EAB has only limited authority under Miss. Code Ann. § 25-9-131 (1999), and that the awarding of attorneys' fees is not one of its enumerated powers.

¶51. Mississippi has no cases on point that answer whether the EAB has the authority or jurisdiction to award attorneys' fees. This issue was brought to this Court in a 1999 case, but it was not decided because the State failed to cross-appeal the award of attorneys' fees. *Tillmon v. Miss. Dep't of Health*, 749 So. 2d 1017, 1018 (Miss. 1999). However, the award of attorneys' fees by the EAB in *Tillmon* was allowed to stand because of a procedural bar. That bar does not exist in the present case, thus the employees' reliance on it is misplaced. Simply put, there is no authority for the EAB to award attorneys' fees; however, on appeal the litigants may claim the accountability act that is delegated to the Court.

## CONCLUSION

¶52. The findings of the circuit court and of the EAB, on all issues except attorneys' fees, were based upon substantial evidence and are not arbitrary or capricious. Therefore, those judgments of the circuit court and the EAB are affirmed. As to the judgment awarding attorneys' fees, we reverse and remand to the circuit court for further proceedings consistent with this opinion.

¶53. **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**PITTMAN, C.J., SMITH, P.J., WALLER, COBB, DIAZ, CARLSON, AND GRAVES, JJ., CONCUR. EASLEY, J., CONCURS IN PART AND IN RESULT.**